UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                  :

SECURITIES AND EXCHANGE COMMISSION,    :
                                  :

               Plaintiff,        :

                                  :

        v.                      :    Civil Action
                                  :    No. 25 Civ. 2937 (RA)

ALBERT SANIGER MANTINAN,            :

                                  :

            Defendant.     :

                                  :
------------------------------------------------------------------------x

## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AND FOR A COMPLETE STAY

JAY CLAYTON
United States Attorney
Southern District of New York

Nicholas W. Chiuchiolo
Sarah Mortazavi
Assistant United States Attorneys

    *- Of Counsel -*

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

ARGUMENT .......................................................................................................................... 4

    I.     THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE. ... 4

    II.    A COMPLETE STAY IS APPROPRIATE. .................................................................. 5

       A.   Applicable Law ........................................................................................................ 5

       B.   Discussion ............................................................................................................... 7

          1.   *The Extent of the Overlap* ................................................................................ 7

          2.   *The Status of the Criminal Case* ....................................................................... 8

          3.   *The Potential Prejudice to the Parties* ............................................................. 9

          4.   *The Interests of the Court* ................................................................................. 9

          5.   *The Public Interest* ........................................................................................... 10

CONCLUSION ..................................................................................................................... 13

**PRELIMINARY STATEMENT**

The United States of America, by and through Jay Clayton, United States Attorney (the "Government"), respectfully submits this memorandum in support of its motion (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the parallel criminal case, *United States v. Albert Saniger*, 25 Cr. 157 (JHR) (the "Criminal Case").

Counsel for defendant Albert Saniger has informed the Government that Saniger consents to the motion. Counsel for the Securities and Exchange Commission (the "SEC") has informed the Government that the SEC takes no position on the Government's motion.

The Criminal Case arises from the same set of facts and circumstances that underlie this action. As a result, the stay requested by the Government in this case is appropriate because any exchange of discovery in this action would be asymmetrical and would merely allow the defendant to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection, a circumstance not present here. *See, e.g.*, *SEC v. Hwang*, No. 22 Civ. 3402 (JPO), 2023 WL 6124041, at *18-19 (S.D.N.Y. Sept. 19, 2023) (granting Government's motion for a full stay of discovery over objection of defendants); *SEC v. Javice*, No. 23 Civ. 2795 (LJL), 2023 WL 4073797, at *4-8 (S.D.N.Y. June 20, 2023) (granting full stay of discovery over defendant's objection and alternative suggestion of partial stay of discovery); *CFTC v. Alexandre*, No. 22 Civ. 3822 (VEC), Dkt. No. 160 (S.D.N.Y. Sept. 2, 2022) (granting full stay over defendant's objection and proposal to permit depositions to proceed); *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. Aug. 8, 2022) (granting Government's motion for a full stay over defendant's objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June

1

3, 2021) (same); *SEC v. Carroll,* No. 19 Civ. 7199 (AT), 2020 WL 1272287, at *2-5 (S.D.N.Y. Mar. 17, 2020) (granting, over defendants' opposition, a full stay).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this matter in its entirety until the conclusion of the Criminal Case against the defendant.

## FACTUAL BACKGROUND

This case and the parallel Criminal Case arise out of the same underlying events. On April 9, 2025, Indictment 25 Cr. 157 (JHR) (the "Indictment" or "Ind.") was unsealed, charging Albert Saniger with securities fraud and wire fraud in connection with his scheme to defraud investors in his start-up Nate, Inc. ("nate") by making false and misleading statements about the company's use of proprietary artificial intelligence ("AI") and its operational capabilities. *See* Indictment (Ex. A).

Both the Indictment in the Criminal Case and the Complaint in this case allege a scheme by the defendant and others to defraud investors of Nate. (Ind. ¶¶ 1-2; Compl. ¶¶ 1-2). Saniger founded nate, an e-commerce company that launched the nate app. (Ind. ¶ 3; Compl. ¶ 1). Saniger marketed nate as a universal shopping cart app that simplified online shopping by enabling users to "skip the checkout" on retail websites by reducing the checkout process to a "single tap." (Ind. ¶ 3). For example, if a consumer found a pair of sneakers that they wanted to purchase on a particular e-commerce site, the user could buy the sneakers by opening nate and clicking "buy." (Ind. ¶ 3). Nate purported to take care of the remainder of the checkout process through AI: selecting the appropriate size, entering billing and shipping information, and confirming the purchase. (Ind. ¶ 3).

Both the Government and SEC allege that Saniger repeatedly told investors and the public that the company's app used proprietary AI technology to autonomously complete online

purchases on behalf of users. (Ind. ¶ 4; Compl. ¶¶ 3, 27). For example, Saniger and those working at his direction stated that nate could navigate retail websites, fill out checkout forms, and process payments with no human involvement—purportedly mimicking the actions of a human user in real time—through the use of "intelligent automation," "artificial intelligence," and technology that "understands web code and decides where to click and what to fill out, so [the consumer does not] have to." (Ind. ¶ 4; Compl. ¶ 4, 53). These claims appeared on the company's website, in marketing materials, and in other statements by Saniger. (*Id.*).

Based on false representations about nate's use of AI, Saniger solicited investments from venture capital firms. In pitch materials transmitted to investors, Saniger touted the company's use of AI and represented that nate was "able to transact online without human intervention." (Ind. ¶ 5; Compl. ¶ 30). Nate marketed its AI capability as a key differentiator in the e-commerce space and central to its scalability and profitability.

The Indictment and Complaint allege that nate did not actually use AI to autonomously navigate the checkout process of e-commerce websites and complete purchases on behalf of users. (Ind. ¶ 8; Compl. ¶¶ 2, 33, 39, 49, 57). While the defendant had acquired AI technology from a third party and hired a team of data scientists to develop it, nate's AI never achieved the ability to consistently complete e-commerce purchases. As Saniger knew, at the time nate was claiming to use AI to automate online purchases, the app's actual automation rate was effectively zero percent. (Ind. ¶ 8; Compl. ¶¶ 56-57). Instead, nate relied heavily on teams of human workers—primarily located overseas—to manually process transactions, mimicking what users believed was being done by automation. (Ind. ¶ 9; Compl. ¶ 49). Saniger used hundreds of contractors, or "purchasing assistants," in a call center located in the Philippines to manually complete purchases occurring

3

over nate. (Ind. ¶ 9; Compl. ¶¶ 2, 34, 49).

Both the Indictment and Complaint also allege that Saniger took steps to conceal his fraudulent scheme. For example, as alleged, Saniger Saniger instructed nate employees not to discuss the manual teams with others, even other nate employees, and he caused contractors working on the manual teams to remove any reference to nate from their social media. (Ind. ¶ 10; Compl. ¶¶ 22, 23).

Finally, both the Indictment and Complaint allege that Saniger directed nate's automation team to develop "bots" to automate some transactions on nate. (Ind. ¶ 11; Compl. ¶¶ 4, 58). After creating the bots, nate used bots in addition to the manual teams to complete purchases that were purportedly being completed by AI technology and despite Saniger prior statement's to investors that nate did not rely on the use of bots. (Ind. ¶ 11; Compl. ¶¶ 4, 58, 60).

## ARGUMENT

The Government's requests to intervene and to stay this matter in its entirety should be granted. Were this case to proceed, there would be a risk of significant interference with the Criminal Case. The requested stay would prejudice no party to this civil action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case. The defendant consents to the motion for a complete stay, and the SEC takes no position.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE.

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively,

4

Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal Case this civil proceeding would have and the similarity of facts and claims between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

Intervention is warranted because the Government's interest in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, neither of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas,* 167 F.R.D. 83, 86 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the Plaintiffs nor the Defendants have this identical interest.").

## II.    A COMPLETE STAY IS APPROPRIATE.

### A.    Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests

of justice seem . . . to require such action." (citations and internal quotation marks omitted)).

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Louis Vuitton*, 676 F.3d at 99. "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (internal quotation marks omitted).

### B.      Discussion

Application of each of these factors here weighs in favor of the stay sought by the Government.

#### 1.      *The Extent of the Overlap*

That the facts of the civil case overlap substantially with the Criminal Case and that similar issues will be decided in each case weigh heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the facts of this case overlap almost entirely with the facts alleged in the Criminal Case. The two cases involve overlapping facts and witnesses, and raise similar issues, including whether Saniger made or caused to be made false statements about nate's use of AI and its operational capabilities and whether those false statements were material. In short, the extent of the overlap between the cases is complete, although it is important to note that perfect parity between the conduct is not required. *See SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 2-3 (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer*, 22 Civ. 3089 (RA), Dkt. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that,

whether the SEC case is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g.*, *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 3. Here, that is unambiguously the case.

In sum, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman,* 15 Civ. 7057 (AJN), Dkt. 43 at 3.

### 2.    *The Status of the Criminal Case*

The filing of the Indictment in the Criminal Case weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (citation and internal quotation marks omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Thus, this factor also militates strongly in favor of a stay.

### 3.    *The Potential Prejudice to the Parties*

No prejudice will result from the complete stay requested by the Government. The SEC has indicated that it takes no position as to the Government's motion.[1] The SEC will not be adversely impacted by a complete stay, as such a stay will allow the SEC to conserve its resources (as well as the resources of the Court) by avoiding needless duplicative litigation of many of the issues presented by the civil action that may be resolved in the Criminal Case. At a minimum, therefore, there can be no argument that there would be prejudice to the plaintiff by staying this action. *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

The defendant consents to the stay. Indeed, granting a stay of the civil case to permit the Criminal Case to proceed to its conclusion would inure to the defendant's benefit, since granting a stay of the civil case would, for now, obviate forcing Saniger to make the choice between being prejudiced in the civil case by the assertion of his Fifth Amendment rights or being prejudiced in the Criminal Case if he waived those rights. A complete stay will also allow the defendant, like the SEC, to conserve resources and avoid needless duplicative litigation of materially identical issues in two separate proceedings. For these reasons, it is not surprising that Saniger consents to the requested stay.

In sum, no party will suffer any unfair prejudice from a complete stay.

### 4.    *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay. The many issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil

---

[1] Where the SEC, the plaintiff in the litigation, does not oppose a stay, "[t]his position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one." *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012).

action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5.    *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence, or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and

intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43 at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (granting government's motion to stay and noting, "[t]he principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise

11

be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in a case where a defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not subject himself to the civil discovery process he may otherwise use affirmatively. *See, e.g.*, *SEC v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery in this case, pursuant to which the defendant would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms, such as requests for admission and interrogatories, to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from the defendant because of his likely assertion of his Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining

asymmetrical discovery, and because the defendant will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's motion.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its motion to intervene and to stay the case in its entirety be granted.

Dated: New York, New York
        June 8, 2026

                                Respectfully submitted,

                                JAY CLAYTON
                                United States Attorney

        By:      /s/ _____
                 Nicholas W. Chiuchiolo
                 Sarah Mortazavi
                 Assistant United States Attorneys
                 26 Federal Plaza, 37th Floor
                 New York, New York 10278
                 Telephone: (212) 637-1247 / 2520

13